UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMAR FOSTER, | ) 1:07CV1303 |
| | ) |
| Petitioner | ) JUDGE KATHLEEN O'MALLEY |
| | ) (Magistrate Judge Kenneth S. McHargh) |
| v. | ) |
| | ) |
| DAVID BOBBY, | ) |
| Warden, | ) |
| | ) |
| Respondent | ) REPORT AND RECOMMENDED |
| | ) <u>DECISION OF MAGISTRATE JUDGE</u> |

McHARGH, MAG. J.

The petitioner Jamar Foster ("Foster"), through counsel, has filed a petition for a writ of habeas corpus arising out of his 2004 convictions for aggravated robbery, aggravated burglary, and felonious assault in the Cuyahoga County, Ohio, Court of Common Pleas. Foster raises a single ground for relief in his petition:

> Mr. Foster did not admit to the facts required to support the nonminimum prison term that the trial court imposed, and those facts were not proven beyond a reasonable doubt to a jury. Therefore, the trial court violated Mr. Sanders's Sixth Amendment right to trial by jury, and his right to due process of law as guaranteed by the Fourteenth Amendment.

([Doc. 1](), § 12.A.)

I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

On April 27, 2004, defendant was indicted pursuant to a six-count indictment. Counts One and Two charged him with aggravated

robbery with one-year and three-year firearm specifications. Counts Three and Four charged him with felonious assault with one-year and three-year firearm specifications. Counts Five and Six charged him with aggravated burglary with one-year and three-year firearm specifications.

Defendant pled not guilty and the matter proceeded to a jury trial on December 1, 2004. For its case, the state presented the testimony of Charley Bowers, Ronald Jones, and Cleveland Police Det. David Santiago.

Charley Bowers testified that in 2003, he sold marijuana from his apartment on Franklin Boulevard in Cleveland. One of the persons to whom Bowers sold marijuana was Ronald Jones, or "Ron Ron." Jones usually bought ten dollar bags and occasionally brought other people with him to Bowers' apartment.

On October 15, 2003, someone pressed the buzzer to be let into his apartment. He then saw Jones and another man in the hall and let them into his unit for a marijuana purchase. According to Bowers, the second man had come to the apartment with Jones on a previous occasion to buy marijuana.

During the incident at issue, the men wanted to buy a half-pound of marijuana. Bowers quoted them a price of $950. The men thought this was a high price but Bowers would not lower it. They spoke amongst themselves, then the second man said, "Well, fine, we're just going to take it" and pulled out a gun from his coat.

According to Bowers, this man made him get down on the floor and held the weapon to his head. The weapon was a semiautomatic, small caliber weapon such as a .25. Jones did not have a gun.

Bowers next testified that he reached around to knock the gun down and as he was swinging around, the weapon went off, striking him in the side. The man then gave the gun to Jones and ran through the apartment searching for marijuana. According to Bowers, Jones held the gun on him and told him not to move, then instructed the other man to hurry, warning that the police would soon be there. The men left approximately two or three minutes later and Bowers called 9-1-1.

Bowers further testified that the bullet traveled through his spleen, liver, and stomach, and that he was hospitalized for six days in connection with the attack.

Bowers met with Det. Santiago at the hospital. He identified Jones and provided a description of the second man. He later viewed a photo array and told police that he knew one of the men but was not sure how he knew him.

Upon returning to his home, he observed that his apartment had been ransacked.

On cross-examination Bowers admitted that he initially told police that the assailant appeared to be in his mid teens. He also acknowledged that he did not know whether he was shot accidentally or intentionally. He also stated that he was not given the photo array until after Jones' trial had commenced. During this proceeding, Bowers testified that the assailant was a black male, and did not provide other details concerning his appearance. He also testified that the men did not take anything from the apartment.

Bowers also explained that Jones kept the weapon on him while the other man searched the apartment.

On redirect, Bowers noted that he initially told police that the other man was called "Mack."

Ronald Jones testified that he is also known as "Ron Ron" and that he is currently imprisoned for felonious assault and aggravated robbery in connection with the shooting of Bowers.* He has also been convicted of two drug cases.

> * See [State v. Jones, Cuyahoga App. No. 84570, 2005 Ohio 397](#) (defendant was convicted of one count of aggravated robbery with one and three year firearm specifications, two counts of felonious assault with one and three year firearm specifications, and having a weapon under disability.

He further testified that he has known defendant for two or three years and that he is known as "Jay." He also stated that he used to buy marijuana from Bowers.

With regard to the incident at issue, Jones testified that he and defendant went to Bowers' home to buy marijuana and defendant inquired about purchasing a "20 sack" or half pound. Bowers indicated that this amount would cost around $900. Defendant asked Bowers to lower the price. Jones' next recollection is of defendant pointing a gun at Bowers' face. Bowers tried to move the gun away. At this time, the gun discharged and Bowers was struck in the stomach.

Jones claimed that he was shocked by defendant's actions and that defendant then passed the gun to him and asked me to hold it while he searched Bowers' freezer. The men then left the apartment and, according to Jones, did not see each other after the shooting.

Jones admitted that he was tried and convicted for a role in connection with the shooting. During his trial, he provided no information about defendant because he was afraid of "street consequences."

Later, when Jones was about to be sentenced, after having fled during the course of his trial, he identified defendant as the shooter.

On cross-examination, Jones admitted that he was not present following the second day of his trial but he claimed that he was in the hospital and that his attorney knew where to find him. He was ultimately convicted of aggravated robbery and felonious assault with firearm specifications. He learned that the judge gave long sentences then met with his lawyer and police. His father then provided the police with a picture of defendant. He ultimately received an eight-year sentence, and he acknowledged that it could have been much longer. He is eligible for early release after serving the time required for his gun specification. He stated that he did not think he would be granted early release, however, and he admitted that he has had other convictions for drug trafficking and for violating his probation.

With regard to his testimony during his trial, Jones had maintained that he and someone named "Mack" coincidentally arrived at Bowers' home at around the same time and did not conspire to rob him. He also admitted that at the time of the shooting, he was intoxicated on alcohol and marijuana. On redirect, he indicated that the state had promised him nothing in exchange for his testimony.

Det. David Santiago testified that he was assigned to investigate the shooting. He met with Bowers in the hospital and learned that he had

4

>major surgery for his wounds. At this time, Bowers indicated that his assailants were "Ron Ron" and "Mack" and that "Mack" was 180 or 185 pounds and 5'9 . Det. Santiago determined that "Ron Ron" was Ronald Jones and Bowers later identified him from a photo array. Det. Santiago did not learn the name of the second man until after meeting with Jones. Jones identified the other man as "Jay" and provided a photograph of him. He learned defendant's name after meeting with someone from Shaw High School.
>
>Det. Santiago denied making any promises to Jones in exchange for his cooperation.
>
>On cross-examination, he admitted that he had taken no fingerprints from the crime scene. He also admitted that when people cooperate with the police it is because they hope to receive something in exchange for that cooperation.
>
>The matter was submitted to the jury and defendant was convicted of all charges. The trial court sentenced him to a total of seven years, representing four years for the offenses plus three years for the firearm specifications.

(Doc. 7, RX 8, at 2-7; State v. Foster, No. 85790, 2005 WL 2807354, at *1-*3 (Ohio Ct. App. Oct. 27, 2005).)

On Jan. 12, 2005, Foster filed a timely direct appeal from his conviction. (Doc. 7, RX 5.) He raised the following assignments of error:

>1. The State failed to present sufficient evidence to sustain appellant's convictions;
>
>2. The appellant's convictions are against the manifest weight of the evidence;
>
>3. The trial court erred in allowing the introduction of testimony which revealed appellant appeared on a "wanted" poster, this error amounted to a violation of Evid.R. 402, 403, and 404(B);
>
>4. The prosecutor's misconduct violated appellant's right to a fair trial guaranteed by the due process provisions of Article I, Section 16 of the

5

> Ohio Constitution and the Fourteenth Amendment to the United States Constitution;
>
> 5. The trial court erred by imposing a sentence in violation of the Fifth Amendment due process clause of the United States Constitution and Article One Section 16 of the Ohio Constitution.

(Doc. 7, RX 6.) On Nov. 7, 2005, the state court of appeals entered its journal entry affirming Foster's conviction. (Doc. 7, RX 8; State v. Foster, No. 85790, 2005 WL 2807354, at *1-*3 (Ohio Ct. App. Oct. 27, 2005).)

On Jan. 11, 2006, Foster filed a motion for leave to file a delayed appeal in the Ohio Supreme Court. (Doc. 7, RX 9-10.) The state high court denied leave to file a delayed appeal, and dismissed the appeal. (Doc. 7, RX 12; State v. Foster, 108 Ohio St.3d 1470, 842 N.E.2d 1051 (2006).)

On May 3, 2007, Foster filed this petition for a writ of habeas corpus. (Doc. 1.) The respondent argues that the petition should be denied as untimely filed. (Doc. 7.)

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

6

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

### III. STATUTE OF LIMITATIONS

The AEDPA requires a state prisoner seeking a federal writ of habeas corpus to file his petition within one year after his state conviction has become "final."

7

Carey v. Saffold, 536 U.S. 214, 216 (2002) (citing 28 U.S.C. § 2244(d)(1)(A)). The conviction becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

The one-year statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari. Clay v. United States, 537 U.S. 522, 528 n.3 (2003); Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2002); Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001), cert. denied, 534 U.S. 924 (2001) (citing cases). However, a habeas petitioner filing for collateral relief does not benefit from the 90 day certiorari period. Lawrence v. Florida, 549 U.S. ___, 127 S.Ct. 1079 (2007) (interpreting 28 U.S.C. § 2244(d)(2)).

Foster did not seek timely review by the Ohio Supreme Court within 45 days, pursuant to Ohio Supreme Court Rule of Practice II, Section 2(A)(1). Thus, Foster's conviction became "final" within the meaning of AEDPA on Dec. 23, 2005. Searcy v. Carter, 246 F.3d 515, 517 (6th Cir.), cert. denied, 534 U.S. 905 (2001). Accordingly, the statue of limitations for filing his habeas petition was Dec. 23, 2006.

The filing of the motion for a delayed appeal is considered collateral review, which tolls the running of the one-year period. DiCenzi v. Rose, 452 F.3d 465, 468 (6th Cir. 2006); Searcy, 246 F.3d at 519; Sanders v. Bobby, No. 5:07 CV 682, 2008 WL 276415, at *3 (N.D. Ohio Jan. 31, 2008). See generally Lawrence, 127 S.Ct. at 1083. Foster filed his notice of appeal on January 11, 2006 (doc. 7, RX 9), and the

8

state high court denied leave to file a delayed appeal on Feb. 22, 2006 (doc. 7, RX 12). Thus, the statute was tolled for 42 days during the pendency of his motion for leave. The statute of limitations then expired on Feb. 4, 2007.

Foster asserts that: "The Sixth Circuit has recognized that a motion for leave to file a delayed appeal in the Ohio Supreme Court may constitute 'direct review' of a conviction." (Doc. 10, at 3, citing Bonilla v. Hurley, 370 F.3d 494, 498 (6th Cir. 2004).) This is inaccurate. In Bonilla, the Sixth Circuit found that the denial of a motion for leave to file a delayed appeal by the Ohio Supreme Court constitutes a procedural ruling sufficient to bar federal habeas review.[1] Bonilla, 370 F.3d at 497. Bonilla then examined the issue of whether there was "cause" to excuse that petitioner's procedural default. Id. at 498. The citation to dicta in Bonilla does not support Foster's claim that a motion for leave to file a delayed appeal in the Ohio Supreme Court should be considered direct review. See DiCenzi , 452 F.3d at 468; Searcy, 246 F.3d at 519; Sanders, 2008 WL 276415, at *3.

Foster did not file his petition for a writ of habeas corpus until May 3, 2007, three months after the limitations period had run. The petition should be denied as untimely.

---

[1] Likewise here, Foster's claim has been procedurally defaulted. See Bonilla, 370 F.3d at 497; Vasquez v. Bradshaw, 522 F.Supp.2d 900, 921 (N.D. Ohio 2007). Because the court finds his petition is untimely, a full analysis of the issue of procedural default is unnecessary.

RECOMMENDATION

It is recommended that the petition be denied.


Dated:  June 25, 2008                    /s/ Kenneth S. McHargh
                                        Kenneth S. McHargh
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).